PARKER, Judge.
J.W., the father of A.W. and J.W., appeals the final judgment terminating his parental rights. We reverse.
The trial court adjudicated both children dependent at very young ages. One child was adjudicated dependent after she tested positive for cocaine at birth. The other child was adjudicated dependent after J.W. and the child’s mother were arrested at their residence on illegal drug charges. The Department of Children and Family Services (the Department) filed case plans for both children with a goal of reunification. J.W. was subsequently convicted in federal court on drug trafficking charges and was given a seventy-month sentence. The Department then filed a new case plan with a goal of termination and filed a petition to terminate the parental rights of both J.W. and the children’s mother.[1]
*1263 At the time of the hearing on the Department’s petition, fifty-four months remained on J.W.’s federal sentence. However, J.W. testified that he believed that his release date was actually within eighteen months of the date of the hearing. J.W. testified that he had had custody of A.W. from the time she was eleven months old until his arrest when she was three years old. He also testified that he had visited both A.W. and J.W. on a regular basis while on pretrial release, although the maternal grandparents had refused to bring the children to visit him in prison. J.W. also testified to his efforts to work on his case plan while on pretrial release and while in prison. The maternal grandmother testified that J.W. made monthly payments to her for the children’s support before his conviction and had paid another $1400 while in prison. She further testified that J.W. had regularly visited the children before his imprisonment and often telephoned the children from prison. She testified that A.W. knew J.W. was her father and that she loved him and talked about him. The Department’s case worker admitted that she had made no effort to contact J.W. since his incarceration. She also denied any knowledge of J.W.’s attempts to comply with the requirements of his case plan.
After hearing all of the testimony, the trial court entered an order terminating J.W.’s parental rights. The trial court’s sole basis for terminating J.W.’s parental rights was its finding that the period of time for which J.W. was expected to be incarcerated constituted “a substantial portion of the period of time before the child[ren] will attain the age of 18 years” under section 39.806(l)(d)(l), Florida Statutes (2001). In reaching this decision, the trial court stated that it was considering both the length of time J.W. would be incarcerated and the relative importance of that time to his children’s development.
On appeal, the parties do not dispute either the facts or the applicable law. They dispute only the interpretation of section 39.806(l)(d)(l) and its application to the facts of this case. J.W. contends that the trial court erred in considering the relative importance of the time he is to be incarcerated because the statute allows the court to look solely to the length of time the parent will be incarcerated, not the “quality” of that time. The Department contends that the trial court properly considered both the length of time of incarceration and the “quality” of that time to J.W.’s children. Thus, the question before this court is whether the legislature’s use of the phrase “substantial portion of the period of time before the child will attain the age of 18 years” limits the trial court to relying solely on the length of the parent’s sentence or whether the trial court may also consider the “quality” of that time in the child’s development.
In addressing the interpretation of a statute, this court must look first to the plain language of the statute. Overstreet v. State, 629 So.2d 125, 126 (Fla.1993) (“Legislative intent must be determined primarily from the language of the statute.”); St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla.1982). The court may not add words to the statute when the language is clear. Overstreet, 629 So.2d at 126. In addition, “words in a statute should not be construed as surplusage if a reasonable construction is possible which will give them some force and meaning.” C.R.C. v. Portesy, 731 So.2d 770, 772 (Fla. 2d DCA 1999). “[E]ven where a court is convinced that the legislature really meant and intended something not expressed in the *1264 phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity.” St. Petersburg Bank & Trust Co., 414 So.2d at 1073 (quoting Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918)). “If the legislature did not intend the results mandated by the statute’s plain language, then the appropriate remedy is for it to amend the statute.” Overstreet, 629 So.2d at 126.
Here, the plain language of section 39.806(l)(d)(l) speaks only to time. The statute requires the court to determine whether the parent will be incarcerated for a “substantial portion of the period of time” before the child reaches age eighteen. Nothing in the statute references the “quality” of the time. The Department’s argument that the term “substantial” can be used to allow the court to consider the relative importance of the time ignores the fact that the term “substantial” modifies the phrase “period of time.” The Department asks this court either to construe the phrase “period of time” as surplusage or to engraft a quality component into the language. Neither of these requests is proper in light of the clear statutory language.
Other states have addressed the issue of the relative importance of the period of incarceration in their statutes dealing with termination of parental rights. See, e.g., Alaska Stat. § 47.10.080 (Michie 2001) (requiring the court to find that the period of incarceration to be served during the child’s minority is significant considering both the child’s age and the child’s need for care and supervision); Me.Rev.Stat. Ann. tit. 22, § 4055 (West 2001) (allowing termination of the parental rights of an incarcerated parent if the parent will be incarcerated for a reasonable period of time considering the age of the child and the child’s need for a stable home); Okla. Stat. tit. 10, § 7006-1.1 (2001) (requiring the court to consider both the duration of the parent’s incarceration and its detrimental effect on the child in determining whether to terminate parental rights). The lack of such a reference to the “quality” of the time or the detriment to the child’s development in section 39.806(l)(d)(l) indicates that no such considerations were contemplated by the legislature. If the legislature intended the trial courts to consider the “quality” of the time to the child, it should amend the statute to reflect this intent.
Based on the plain language of section 39.806(l)(d)(l), we conclude that the trial court may consider only the length of time the parent will be incarcerated in determining whether that period constitutes a “substantial portion of the period of time” before the child reaches age eighteen. See W.W. v. Dep’t of Children & Families, 811 So.2d 791 (Fla. 4th DCA 2002) (reversing termination of parental rights under section 39.806(l)(d)(l) and noting that the fifty-four months the father was to serve in prison was not a “substantial portion” of eighteen years). Any other interpretation of section 39.806(l)(d)(l) does not hold true to the plain language of the statute.
Under the plain language of section 39.806(l)(d)(l), J.W.’s remaining sentence does not constitute a “substantial portion of the period of time” before A.W. and J.W. reach age eighteen. At the time of the termination hearing, A.W. was four years old and J.W. was one year old. The fifty-four months remaining in J.W.’s prison sentence do not constitute a “substantial portion” of the remaining minority of A.W. and J.W. Therefore, the trial court erred in terminating J.W.’s parental rights under section 39.806(l)(d)(l).
Because J.W.’s parental rights may not be terminated under section 39.806(l)(d)(l) *1265 and because the Department failed to prove any other statutory basis for terminating J.W.’s parental rights, we reverse the final judgment. On remand, A.W. and J.W. shall remain dependent and should remain in the custody of their maternal grandparents. J.W. should be required to work on those tasks in his case plan that he is able to work on while incarcerated. Upon his release from prison, J.W. should continue to work on his case plan. Custody of A.W. and J.W. should remain with their grandparents while J.W. is given the opportunity to complete the tasks on his case plan with a goal of reunification.
Reversed and remanded.
CASANUEYA and STRINGER, JJ„ Concur.

. The children’s mother signed surrender documents as to both children, and the trial court terminated her parental rights. She is *1263 not a party to this appeal, her parental rights. She is not a party to this appeal.