944 So.2d 553 (2007)
S.S., the father, Appellant,
v.
D.L., the mother, Appellee.
No. 4D05-1548.
District Court of Appeal of Florida, Fourth District.
January 3, 2007.
Rehearing Denied January 3, 2007.
*555 Felicia Shaman of Law Office of Felicia Shaman, P.A., Fort Lauderdale, for appellant.
Richard L. Rosenbaum of Law Offices of Richard Rosenbaum, Fort Lauderdale, for appellee.

ON MOTION FOR REHEARING
STONE, J.
We deny D.L.'s motion for rehearing and rehearing en banc, but withdraw our opinion of August 23, 2006, and substitute the following opinion in its place.
We reverse a partial final judgment terminating parental rights of S.S., the father, on the petition of D.L., the former wife and mother. The Department of Children and Families is not a party to these proceedings.
In 1997, S.S. was convicted of sexual battery of the thirteen-year-old friend of his eldest daughter. S.S. was sentenced to eight years in prison, followed by ten years of probation. There have never been any allegations of abuse of this daughter, or any of his children.
D.L. ultimately remarried. When S.S.'s release became imminent, nearly five years after the marriage was dissolved, his former wife amended the petition for dissolution to include termination of S.S.'s parental rights to his two younger daughters.[1] S.S. was still incarcerated at the *556 time of the termination hearing and appeared by telephone.
The only witnesses against him were D.L., her new husband, and a guardian ad litem. The guardian ad litem report was distinctly in favor of termination of parental rights. She had spent time in the mother's new home, interviewing S.S.'s daughters, D.L., and her new husband. The guardian ad litem spent an hour interviewing S.S. on the telephone. The gist of her report was that the girls were flourishing, had few memories of their biological father and those were not all that pleasant, and their lives should not be disrupted. She had nothing nice to say about S.S., finding him manipulative, his crime disgusting, and his mottled criminal past disturbing. S.S. had a cocaine charge in Texas in 1985, which was dismissed, and had been convicted of theft in 1994. However, there is no consideration in the report of exploring whether termination was necessarily the least restrictive means of protecting the children. S.S. underwent no psychological or substance abuse testing and has not been offered services or therapy.
At the final hearing, S.S. testified that he "would abide by all Court's orders and offer to do whatever the Court recommends for that  so they could make their own determinations as to my mental capacity and character and things like that." He stated that he had been evaluated by the Department of Corrections (DOC) when first incarcerated, but that no treatment had been ordered for him, adding, "I'd do anything that's possible so that I could get the right to be a part of my children's lives."
S.S.'s attorney addressed the issue of whether termination of parental rights was the least restrictive means of ensuring the best interests of the children with the guardian ad litem, asking why no supervised visits were considered. The guardian ad litem replied that the girls did not want to change the way things were. When questioned about any basis to connect his past crime with the risk of future abuse of his children, she could not provide anything beyond speculation. The guardian ad litem stated that she thought it was "healthier to detach from a circumstance as this," and the children were at risk of emotional abuse S.S. "could put these children through" because of animosity between the two parents. The guardian ad litem was not able to provide any support for her statements other than it would simply be easier and safer to terminate S.S.'s rights and let the two girls go looking for him after they turned eighteen, if they so desired.
The trial court's order dismissed abandonment, egregious conduct, and aggravated child abuse as factors. However, the trial court assigned the closeness in age of the oldest girl to the age of S.S.'s victim as a factor with weight. The trial court found that S.S.'s testimony was self-serving and, based only on that testimony, considered the probability high that S.S. would abuse drugs or alcohol in the future. Further, notwithstanding that S.S. had acknowledged guilt, the trial court considered that S.S. took no responsibility for his crimes.
The court relied upon section 39.806(1)(c), Florida Statutes, for its decision, recognizing that it applied when parents engage in conduct toward the child or other children that demonstrates that continued parental involvement threatens the life, safety, or well-being, or physical, mental, or emotional health of the child, irrespective of the provision of services or whether or not there had been services.
The trial judge also listed as a factor section 39.806(1)(d)1., Florida Statutes, dealing with incarceration of a parent for a *557 substantial portion of a child's minority. The court interpreted this to include retrospective incarceration, as well as prospective incarceration, and noted that S.S. had been gone for the past seven formative years of his daughters' lives.
This case differs from the bulk of decisional law on termination of parental rights in that these proceedings were initiated by a parent, not the state. Section 39.806(1), Florida Statutes, allows a petition by any person with knowledge of the facts alleged. In fact, termination cases filed by divorced parents are rare, inviting caution to avoid second challenges to custody determinations. See T.V.R. v. C.R., 918 So.2d 395, 397 n. 1 (Fla. 2d DCA 2006).
To prevail, D.L.'s burden was to present clear and convincing evidence of a statutory ground for terminating and clear and convincing evidence that terminating parental rights is in the best interests of the child. M.S. v. Dep't of Children & Families, 920 So.2d 847, 849 (Fla. 4th DCA 2006). Further, however, because of the constitutional implications involved, the movant must also establish that termination is the least restrictive means of protecting the children from serious harm. B.C. v. Dep't of Children & Families, 887 So.2d 1046, 1050 (Fla.2004). A trial court's finding of clear and convincing evidence is reversible only if clearly erroneous or lacking in evidentiary support. In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995).
Section 39.811(6), Florida Statutes, establishes circumstances under which the parental rights of one parent may be terminated without severing the rights of the other. The qualifying circumstances found in section 39.811(6) include: (a) if the child has only one surviving parent (not the case here); (b) the identity of the other parent is established as unknown by sworn testimony (inapplicable); (c) the parent whose rights are to be terminated became a parent through a single parent adoption (inapplicable); (d) the protection of the child demands termination of the single parent (possible); or (e) the criteria in section 39.806(1)(d) and (f)-(i) are met.
Section 39.806(1)(d) deals with incarceration; (f) deals with egregious conduct (dismissed by the trial court); (g) deals with aggravated child abuse, sexual battery or sexual abuse on the particular child or children (dismissed by trial court); (h) deals with murder or voluntary manslaughter of another child or felony assault that results in serious bodily injury to the child or another child (inapplicable); and (i) comes into play when parental rights of the parent to a sibling have been involuntarily terminated (inapplicable). The only possible applicable subsections are 39.811(6)(d) or 39.806(1)(d).
The application of subsection (6)(d), for protection of the children, is supported only by the guardian ad litem's testimony that S.S.'s past conduct warranted protection of the two girls. However, the guardian ad litem presented nothing but speculation. S.S. never directly harmed his daughters. Moreover, the guardian ad litem spent only one hour on the telephone with S.S. and had not conferred with anyone else in his family, any of his friends, or any personnel at the prison where he had been incarcerated for a number of years. This testimony, taken alone, does not rise to the level of clear and convincing evidence necessitating termination to protect the girls. It is simply evidence of the guardian ad litem's understandable concern.
Section 39.806(1)(d)1., dealing with incarceration, does not support terminating parental rights in this case. In B.C., our high court held that it is the amount of remaining incarceration from the date that *558 the termination petition is filed that must constitute a substantial portion of the child's minority in order to utilize this section. B.C., 887 So.2d at 1055.
In the case at bar, one girl was twelve and one ten at the time of filing for termination, and S.S. was to be discharged from prison a mere month after entry of the order on appeal. The time of remaining incarceration is insignificant relative to either girls' remaining minority. See W.W. v. Dep't of Children & Families, 811 So.2d 791 (Fla. 4th DCA 2002) (holding that even twenty-five percent was not a substantial portion); In re A.W., 816 So.2d 1261 (Fla. 2d DCA 2002) (holding that thirty-three percent was not substantial). Therefore, it is clear that single parent termination was not warranted by this subsection.
Further, even were we to conclude that the findings under subsection 39.811(6)(d) are supported by clear and convincing evidence, D.L. has not shown that termination is the least restrictive means of protecting the girls from serious harm. See Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565, 571 (Fla. 1991).
Even where a parent's past conduct with respect to an older child may demonstrate a risk of harm to a current child, "the constitution still requires that [the movant] demonstrate that termination as to the current child is the least restrictive means of protecting the child based on a totality of circumstances." W.R. v. Dep't of Children and Family Servs., 896 So.2d 911, 915 (Fla. 4th DCA 2005) (citation omitted). In the context of termination of parental rights, the test "requires that those measures short of termination should be utilized if such measures can permit the safe re-establishment of the parent-child bond." L.B. v. Dep't of Children & Families, 835 So.2d 1189, 1196 (Fla. 1st DCA 2002).
Here, the order terminating S.S.'s parental rights is silent as to the issue of least restrictive means. There has been no attempt to maintain familial ties between the father and daughters, and at all times, S.S. has been subject to a "no contact" order.
We recognize that the guardian ad litem testified that S.S. was beyond rehabilitation. However, that opinion, which may yet turn out to be correct, was not expert, nor was it founded on any objective assessment of his problems or possible treatment. It is based solely on the one hour telephone call and the opinions of D.L. The record contains S.S.'s testimony that he was amenable to treatment and would do whatever the court deemed necessary to preserve and improve his relationships with his daughters. The record contains no evidence that S.S. would not respond to treatment.
Furthermore, subsection 39.806(1)(c) provides:
(c) When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provisions of services. Provision of services may be evidenced by proof that services were provided through a previous plan, or offered as a case plan from a child welfare agency.
This subsection has been held to mean that provision of services will be futile, or that the continued parent-child relationship will threaten the child/ren in some way, despite the provision of services. T.M. v. Dep't of Children & Families, 905 So.2d 993, 997 (Fla. 4th DCA 2005); W.R., 896 So.2d at 913; M.E. v. Dep't of Children & Families, 919 So.2d 637, 642 (Fla. 3d DCA *559 2006); I.R. v. Dep't of Children & Family Servs., 904 So.2d 583, 587 (Fla. 3d DCA 2005); Y.F. v. Dep't of Children & Family Servs., 893 So.2d 641, 642 (Fla. 2d DCA 2005); In re G.C.A., 863 So.2d 476, 479 (Fla. 2d DCA 2004); N.L. v. Dept. of Children & Family Servs., 843 So.2d 996, 1002 (Fla. 1st DCA 2003). Here, services were not provided, and S.S. was not given the opportunity to pursue them proactively.
We recognize that there is cause for the concerns expressed by D.L. and for any hostility towards S.S. We also recognize that continued parental interaction would be highly disturbing to D.L., her new husband, and the girls, but those factors alone do not impute harm to the children. It is well established that the fact of past crime is not enough; there must be a further nexus between the past conduct and future behavior. "The issue in prospective neglect or abuse cases is whether future behavior, which will adversely affect the child, can be clearly and certainly predicted." L.B., 835 So.2d at 1195. We also note that in R.F. v. Department of Children & Families, 770 So.2d 1189, 1194 (Fla.2000), a dependency case, requiring an even less stringent showing, the supreme court recognized that a "simple showing by DCF that a parent committed a sex act on one child does not by itself constitute proof that the parent poses a substantial risk of imminent abuse or neglect to the child's sibling. . . . While the commission of such an act may be highly relevant, it is not automatically dispositive of the issue of dependency." 770 So.2d at 1194.
Because "[p]arents have a fundamental liberty interest, protected by both the Florida and federal constitutions, in determining the care and upbringing of their children," Florida Dep't of Children & Families v. F.L., 880 So.2d 602, 607 (Fla.2004), non-expert speculation is not a sufficient basis for terminating parent rights. See also R.W.W. v. Dep't of Children & Families, 788 So.2d 1020, 1023 (Fla. 2d DCA 2001).
We reverse the termination of S.S.'s parental rights and remand with directions to consider less restrictive alternatives before any final decision is reached with respect to termination.
We recognize, as noted by the trial court, that adjudication as a sexual predator, alone, is sufficient support for termination. Section 39.806(1)(d)(2) allows termination of parental rights where the parent is incarcerated and has been determined by a court to be a sexual predator as defined in section 775.21, Florida Statutes. See W.W., 811 So.2d at 792. However, there was no evidence before the trial court that S.S. has been determined to be a sexual predator, and the trial court chose not to base its decision on that section because there was no such designation at the time of the criminal proceedings. Apparently, although it is not clear, once D.L. realized that S.S. had not been so designated, D.L.'s attorney, not the state, got an ex parte order designating him, but S.S. was not noticed, and notice is required. Therrien v. State, 914 So.2d 942, 949 (Fla.2005).[2] Acknowledging this, the trial court explicitly placed little weight on this factor, but added that in the future, if there were such a finding or, if challenged, it was upheld, such would then be sufficient support for its decision. Absent such evidence, we cannot now rely upon this provision to uphold the judgment.
POLEN and FARMER, JJ., concur.
NOTES
[1] S.S.'s eldest daughter, no longer a minor and not D.L.'s daughter, was not included in the petition.
[2] Although Therrien had not yet been decided at the time of S.S.'s TPR hearings, the opinion only re-states the statute's unambiguous and clear requirements.